# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SHAWN WILLIAMS,**

        **Plaintiff,**

-vs-                                         **Case No. 6:04-cv-1447-Orl-19KRS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This matter came before the Court for consideration without oral argument on the complaint filed by Shawn Williams seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for social security benefits. Doc. No. 1. The Commissioner answered the complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration ("SSA"). Doc. No. 8.

## I.   PROCEDURAL BACKGROUND.

In 2000, Williams applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq.*, and supplemental income benefits under the Supplemental Security Income for Aged, Blind, and Disabled program ("SSI"), 42 U.S.C. § 1381 *et seq.* R. 54-56; 218-21. In the OASDI

application, Williams alleged a disability onset date of May 28, 1975.  R. 54.  In the SSI application, Williams alleged a disability onset date of November 26, 1998.  R. 218.[1]  The SSA denied Williams's applications both initially and on reconsideration. R. 39-48, 223-30.  Williams made a timely request for a hearing.  R. 49.

An Administrative Law Judge ("ALJ") held a hearing on September 25, 2001. Williams, who was accompanied by his attorney, testified at the hearing.  Jane F. Beougher, a vocational expert ("VE"), also testified.   R. 305-14.

The ALJ concluded that Williams could perform a limited range of light duty work. Relying on the testimony of the VE, the ALJ concluded that Williams was not disabled. R. 234-43.

Williams timely sought review of the ALJ's decision by the Appeals Council.  R. 244-46.  The Appeals Council reversed the ALJ's decision and remanded the case for further review.  TR. 249.  Among other things, the Appeals Council found that the ALJ failed to consider the work-related limitations imposed by Francisco E. Rosillo, M.D., one of the physicians who examined Williams.  TR. 249.  On remand, the Appeals Council also instructed the ALJ to "identify and resolve any conflicts between the occupation evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).  R. 250.

---

[1] Williams filed an earlier application.  An ALJ issued a decision on November 25, 1998, finding that Williams was not disabled after a hearing.  The Appeals Council affirmed this decision.  TR. 36-37.

An ALJ held another hearing on November 25, 2003.  Williams, accompanied by an attorney, and Robert San Filippo, a VE, testified.  R. 315-50.

The ALJ found that Williams had not engaged in substantial gainful activity since the alleged onset date of his disability.  R. 23.  The ALJ concluded that the medical evidence showed Williams had idiopathic thoracolumbar scoliosis, a history of asthma with normal spirometry, borderline intellectual functioning, a sickle cell trait without associated joint problem, and a history of burn scars to the lower extremities, which were severe impairments.  R. 19.  He concluded that these impairments did not meet or equal any impairments listed in the SSA regulations.  *Id.*

In assessing Williams's residual functional capacity ("RFC"), the ALJ gave little weight to the opinion of James T. Drew, M.D., who examined Williams in February 2001, and had opined that Williams could not work due to severe scoliosis.  R. 20.  The ALJ concluded that this opinion was not supported by clinical findings and was contrary to the preponderance of the evidence.  The ALJ explained this conclusion as follows:

> [Williams] is neurologically intact, has a normal gait and full range of motion of his cervical spine.  He has no muscle spasms.  His motor, sensory and reflex findings are all normal. [Williams's] grip strength and fine manipulation is normal.  Moreover, Dr. Rosillo, Dr. Gresham and Dr. Fahey have all opined that the claimant is capable of sedentary activity.  Dr. Downing also reported that the claimant could return to work after a two-day illness.

*Id*. The ALJ agreed with the opinions of Drs. Rosillo, Gresham and Fahey that Williams could do sedentary work on a sustained basis with occasional postural limitations and environmental restrictions, with the further limitations that he could perform only limited overhead reaching with his right arm.  *Id*.  The ALJ also concluded that Williams would

-3-

be moderately limited in his ability to understand, remember and carry out detailed instructions due to borderline intellectual functioning, and that he would have moderate limitations in the ability to complete a normal workday and workweek without interruptions. *Id*.

The ALJ considered Williams's complaints of the functional limitations arising from pain. He concluded that these complaints were not fully credible or persuasive for the following reasons: (1) Williams lived a sedentary lifestyle; (2) he was able to take care of his personal needs and drive; (3) he watched Gospel stations and listened to music; (4) he got along well with family and friends; (5) he had only mild restriction of range of motion in his back and shoulder; (6) he took no narcotic medication to relieve pain; and (7) he had not had frequent physician intervention or emergency room visits. R. 20-21.

The ALJ found that Williams had the RFC to perform do the following:

> [Williams] can stand and walk two hours in an eight-hour workday, sit six hours in an eight-hour workday and occasionally lift twenty-five pounds. [Williams] has occasional postural limitations in climbing, kneeling, crouching, crawling and stooping. He would have frequent limitations in balancing. [Williams] would have environmental restrictions to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. [Williams] is unable to perform reaching overhead with his right upper extremity. [He] has no limitations in his ability to remember, understand and carry out very short and simple instructions. He is moderately limited in his ability to understand, remembers and carry out detailed instructions. He had moderate limitations in his ability to complete a normal workday and workweek without interruptions. [He] has no restrictions of activities of daily living and no limitations in social functioning.

R. 21. The ALJ found that Williams had no past relevant work to which he could return. *Id.*

The VE testified that an individual with this RFC would perform the following jobs, which were available in significant numbers: small parts assembler (DOT 206.684-022); bench worker (hand) (DOT 715-684-026); sorter (DOT 521.687-086); and surveillance system monitor (DOT 379.367-010).  R. 22.  Based upon this testimony, the ALJ concluded that Williams was not disabled.  R. 23.

Williams timely requested review of the ALJ's decision.  R. 11.  On August 5, 2004, the Appeal Council denied Williams's request for review, finding no basis for changing the ALJ's decision.  R. 8.  Thereafter, Williams timely filed his complaint in this Court.  Doc. No. 1.

## II.     JURISDICTION.

The Commissioner issued a final decision after a hearing with respect to Williams's application for OASDI and SSI benefits.  Therefore, the Court has jurisdiction of this matter under 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III.    STATEMENT OF FACTS.

*A.     Williams's Statements and VE Testimony.*[2]

Williams was born on May 28, 1975.  R. 320.  He is 6' tall.  He is right-handed.  R. 321.

He took special education classes.  He graduated from high school, but he could not read or write well.  R. 326.

---

[2] Because the tape recording of the first hearing before an ALJ was largely inaudible, I have not information from the transcript of that hearing in the statement of facts.

He previously worked at a diner. He was fired when he could not work due to an asthma attack. R. 327, 332.

Williams had pain in his knees, wrists, and hands when it was cold or rainy. R. 329. He could not bend or lift due to scoliosis. R. 334. He could not sit for long periods. R. 321.

Williams had high blood pressure, which caused migraine headaches. R. 331. Being around dust and cleaning materials aggravated his asthma. R. 333. Due to mitral valve prolapse, he had problems when he became over-anxious. R. 333. He could not afford doctors' care or medication. R. 335. When he had medication, it caused drowsiness, dizziness and sleepiness. R. 84.

Williams could press buttons on a telephone. R. 322. He could button buttons, open and shut doors, and hold a glass. R. 322-23. Sewing on a button was very difficult. TR. 322-23. If he tried to cut meat or use utensils his left hand would cramp. R. 322.

He was able to drive a car. R. 326. He could prepare sandwiches. R. 323. He was often tired and weak. R. 75. Pain woke him from his sleep three or four times a night. R. 84.

His mother wrote that Williams tried to help with household chores, but his pace was slow. Sometimes he would have to lie down due to pain. R. 71. He watched Gospel stations and listened to music. He got along well with family and friends. He could follow instructions about 70% of the time. R. 72.

Dr. San Filippo, the VE, was asked to consider a young individual with borderline intellectual functioning, who had previously performed medium, unskilled work. He could do mild, sedentary work. He would not be able to bend, lift, climb stairs or do long distance walking. He would have moderate limitations in the ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods of time, and to complete a normal workday or workweek without psychologically based symptoms. He would have marked limitations in the ability to perform at a consistent pace without an unreasonable number and length of rest periods. He could complete simple tasks and make simple decisions. He needed to avoid hazards. R. 337-39. He also should avoid fumes, odors, dust and gases. R. 343.

Dr. San Filippo opined that this individual could perform the following sedentary, unskilled work: assembler of parts (706.684-022); hand bench worker (715.684-026); sorter (521.687-086); surveillance system monitor (379.367-010). R. 336-43. All of these jobs existed in significant numbers. *Id.*

The ALJ then asked the VE to assume that Williams would have limited use of his hands, as he testified. The VE opined that this limitation would preclude all of the jobs he identified. R. 344. If Williams's lifting were restricted to three to five pounds, he also could not perform the identified jobs. R. 347.

*B.   Medical Records.*

An x-ray taken in February 1996 revealed that Williams had moderately severe scoliosis. R. 141. Records from the Orange County Medical Clinic reflect that he

complained of upper back pain in March 1998.  R. 135.  He also complained of lower back pain in June 1998.  R. 133.

A chiropractor examined Williams in May 1998.  At that time, Williams complained of neck and back pain radiating to his arms and legs.  R. 129.  The chiropractor noted palpable muscle spasms in his spine, and decreased range of motion in his back with pain.  *Id*.  By June 20, 1998, the chiropractor's notes indicate that Williams had been pain free for two days although it appears that he complained of pain on the day of the examination.  R. 126.  By June 25, 1998, Williams's lower back pain and leg pain was decreasing.  R. 125.

On June 29, 1998, the chiropractor opined that Williams could lift three to five pounds no more than 1/10th of an eight-hour day.  He could sit one hour without interruption, and sit a total of only two hours a day.  He could never perform postural activities.  He had limitations on the ability to reach, push and pull.  He also had environmental restrictions and restrictions regarding working around moving machinery.  R. 122-24.

The report of an ultrasound taken in August 1998 reflected that Williams had changes compatible with mild arteriosclerosis of a diffuse nature without overt occlusion or stenosis.  R. 148-49.

Francisco E. Rosillo, M.D., examined Williams in May 2000.  Williams complained of constant back pain with walking, bending or turning his body.  He could not lift any weight.  He also had moderate chest discomfort two or three times a week, for fifteen to

twenty minutes. In 1994, he sustain second-degree burns of both legs, which caused them to be sensitive. R. 150.

Upon examination, Dr. Rosillo noted pain in Williams's thoracic spine and pronounced scoliosis. R. 151-52. Williams's motor strength was good, and he had normal manual dexterity. Spirometry tests showed results consistent with moderate obstructive disease. R. 152-57. Dr. Rosillo's assessment was that Williams had chronic low back pain due to severe thoracolumbar scoliosis, anemia due to sickle cell trait, bronchial asthma, mitral valve prolapse and a history of burns to both legs. R. 152.

Dr. Rosillo opined that Williams would not be able to bend, lift, climb stairs or walk for long distances due to scoliosis. He could do mild sedentary work, but not heavy exertional activity due to his asthma and anemia. R. 152.

In June 2000, Nancy S. Hinkeldy, Ph.D., a psychologist, examined Williams at the request of the SSA. After administering various psychological tests, Dr. Hinkeldy concluded that Williams had borderline intellectual functioning with the possibility of a mild learning disorder. She concluded that Williams could sustain competitive employment commensurate with his intellectual functioning. R. 160-63.

In November 2001, Jack L. Gresham, M.D., examined Williams at the request of the SSA. Upon examination, Dr. Gresham did not note any muscle spasms or spinal tenderness. Williams had normal range of motion in the head and neck. His grip strength was good and his manual dexterity was normal. R. 209. An x-ray confirmed that Williams had scoliosis, which would prohibit Williams from performing heavy labor.

R. 210.  In an RFC assessment, Dr. Gresham opined that Williams would frequently have difficulty in postural activities, but no other limitations.  R. 213-16.

James T. Drew, M.D., examined Williams in February 2001.  Dr. Drew opined that Williams had severe scoliosis that required orthopaedic treatment.  R. 207.  In August 2001, Dr. Drew wrote that Williams was unable to work due to scoliosis and the inability to pay for needed care.  TR. 206.  There are no records of Dr. Drew's examination of Williams before the Court.

Jeffrey A. Downing, D.O., apparently treated Williams sometime before February 2003.  On February 1, 2003, Dr. Downing wrote that Williams had hypertension, mitral valve prolapse and somatic dysfunction which rendered Williams unable to work.  Dr. Downing treated Williams's high blood pressure with medication.  R. 293.

In March 2004, Ilka Fahey, M.D., and Mario Medero, M.D., examined Williams at the request of the SSA.  At that time, Williams complained of back pain radiating into his head with frequent headaches.  Long periods of walking or lying down and climbing worsened his pain.  Tightness and scars from the burns on his legs prevented him from running, riding a bike or standing for long periods.  R. 294.  He had an asthma attack two days earlier while cleaning and dusting his room.  He was being treated with blood pressure medicine and an Albuterol inhaler.  R. 295.

Upon examination, the doctors found that Williams's grip strength was normal. His ability to do fine manipulation was normal.  He had scoliosis, but normal range of motion in his back.  He had decreased range of motion in his right shoulder.  A pulmonary function test was normal.  The doctors' impression was moderate to severe

scoliosis with back pain, hypertension, asthma by history, frequent headaches and history of burns to his legs.  The doctors found no complications due to hypertension, and no clinical signs of congestive heart failure.  R. 297-98.

In an RFC assessment, Dr. Fahey opined that Williams could lift fifty pounds occasionally and twenty-five pounds frequently.  He could stand or walk at least two hours a day, but he had no restrictions on sitting.  He could only occasionally climb, kneel, crouch, crawl or stoop.  He would frequently have problems with balancing.  He had a limited ability to reach with his right shoulder.  R. 301-04.

    C.    *Reviewing Professionals*.

Other professionals rendered mental and physical RFC opinions based on a review of Williams's medical records.  On June 30, 2000, K. Eeltink, Ph.D., opined that Williams would often have deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  R. 164-71.  Jeffrey L. Prickett, Psy.D., concurred with Dr. Eeltink's assessment in a form completed in August 2000.  R. 185-92.  Another professional whose name is illegible opined in June 2000 that Williams would have moderate limitations in the ability to do the following: understand, remember and carry out detailed instruction; and maintain attention and concentration for extended periods.  R. 173-76.  Dr. Prickett concurred with this assessment as well, although he also added that Williams would be moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  R. 194-97.

In July 2000, a physician opined based on a review of Williams's medical records that he could lift twenty pounds occasionally and ten pounds frequently, and sit, stand or walk six hours a day. He could never climb, and only occasionally balance, stoop, kneel, crouch or crawl. He also needed to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. R. 177-84. In August 2000, M. de la Cerna, M.D., essentially concurred with this assessment. R. 198-05.

## IV.  STANDARD OF REVIEW.

To be entitled to Social Security disability benefits under OASDI or SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). [3] Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry which must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the claimant unable to perform his or her former occupation?
> (5) Is the claimant unable to perform any other work within the
>
> economy?

---

[3] A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalcies which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

20 C.F.R. § 404.1520(a)(4).[4]  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g., McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987) (per curiam).

This Court's review of a final decision issued by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standards.  *McDaniel*, 800 F.2d 1029-30.  While a great deal of deference is paid to the ALJ's factual findings, "[n]o similar presumption of validity attaches to the [ALJ's] legal conclusions, including determination of the proper standards to be applied in evaluating claims."  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision.  *Id*. at 1000.  Even if the Court finds that the evidence weighs against the SSA's decision, it must affirm if the decision is supported by substantial evidence.  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The Court may not reweigh the evidence or substitute its own judgment for that of the SSA.  *Id*.  When reviewing a final decision issued by the SSA, this Court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

---

[4] In an OASDI case, a claimant must establish that he or she was disabled during the time that she was insured under the act.  *See* 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

**V.   ANALYSIS.**

Williams contends that the ALJ erred by failing to credit Dr. Rosillo's opinion that he should not lift, bend or climb, and by failing to credit the functional limitations indicated by his chiropractor.  He argues that the ALJ did not properly consider his complaints of pain.  He also submits that the VE identified a job that was beyond Williams's RFC as determined by the ALJ.  Finally, he asserts that the ALJ should have accepted the opinion of the VE that Williams could not work if Williams's complaints of pain and functional limitations were fully credited.  These are the only issues I will consider.

*A.   Treating Physician.*

The ALJ considered both the opinion of the chiropractor and of Dr. Rosillo, as shown by his recitation of the opinions of both of these professionals.  The ALJ correctly stated at the hearing that a chiropractor is not an acceptable medical source.  R. 346; 20 C.F.R. §§ 404.1513, 416.913.  Therefore, the ALJ was not required to accept the chiropractor's RFC assessment.  *Cf. Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998)(stating that ALJ "was permitted to accord less weight to chiropractors . . . than to medical doctors.").

Although the ALJ did not adopt Dr. Rosillo's opinion that Williams could not bend or lift in making his RFC assessment, the failure to do so is, at worst, harmless error.  When posing the hypothetical question to the VE, the ALJ quoted the opinion of Dr. Rosillo that Williams could not bend or lift, climb stairs or do long distance walking.  R. 338.  The VE opined that even with these limitations, Williams could perform the sedentary jobs he identified.

Therefore, there was no reversible error regarding the ALJ's consideration of the opinions of Williams's treating physicians.

*B.     Complaints of Pain.*

> The appropriate legal standard for evaluating a claimant's subjective complaint of pain is for the [Commissioner] . . . to consider a claimant's subjective testimony of pain if [she] finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) [that] the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Walker v. Bowen*, 826 F.2d 996, 1003-04 (11th Cir. 1987) (citing *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986) (citation omitted)).  If proof of a disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  If the ALJ discredits the claimant's subjective testimony, "he must articulate explicit and adequate reasons" for doing so.  *Id.* at 1561-62.

In the present case, the ALJ applied the pain standard.  He found that Williams had underlying medical conditions that could reasonably result in pain.  However, he concluded that the functional limitations arising from the pain were not as severe as Williams testified they were.

The ALJ's articulated reasons for discrediting Williams's testimony were as follows:  (1) Williams lived a sedentary lifestyle; (2) he was able to take care of his personal needs and drive; (3) he watched Gospel stations and listens to music; (4) he

-15-

got along well with family and friends; (5) he had only mild restriction of range of motion in his back and shoulder; (6) he took no narcotic medication to relieve pain; and (7) he had not had frequent physician intervention or emergency room visits.  The sixth and seventh factors must be discounted because there is ample evidence in the record that Williams could not afford doctors' care or medication.  The other reasons are supported by evidence in the record.  While these reasons do not establish that Williams's was not disabled, they provide some basis to support the ALJ's conclusion that Williams's testimony about the limitations arising from pain was not entirely credible.  Accordingly, the ALJ did not err in his assessment of the functional limitations arising from Williams's complaints of pain.

    *C.    Vocational Expert*.

In response to questions from Williams's attorney, the VE testified that if Williams's testimony about the problems with using his hands were credited, Williams could not perform any of the jobs the VE identified.  Williams contends that this testimony is dispositive.  However, substantial evidence in the record supports the ALJ's conclusions that Williams had no limitations in use of his hands.  Drs. Gresham and Fahey found that Williams had good grip strength and no limitation in grasping or manipulation.  The ALJ was required to accept the opinion of a VE only to the extent that the opinion was based on the RFC that the ALJ found to be applicable.  Because limitation on use of Williams's hands was not part of the ALJ's RFC finding, there was no error in refusing to accept the VE's testimony that if Williams had problems with use of his hands, he could not work.

Williams also argues that the VE erred because one of the jobs he said Williams could perform was defined in the *Dictionary of Occupational Titles* as requiring a light level of exertion. This error is harmless. The VE identified four jobs that Williams could perform, only one of which may have exceeded the RFC established by the ALJ. Because three other jobs remained within the RFC that were available in significant numbers, the ALJ's opinion that Williams could would at these jobs is still supported by substantial evidence.

There was, therefore, no error in the ALJ's consideration of the VE's opinion.

## V.    RECOMMENDATION.

For the reasons discussed herein, I **RESPECTFULLY RECOMMEND** that the decision of the SSA be **AFFIRMED**. I further recommend that after the Court rules on this Report and Recommendation, it direct the Clerk of Court to issue a judgment consistent with this Order and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE** and **ORDERED** in Orlando, Florida on January 20, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties